**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

VILMA R.,
    Plaintiff,

v.                                    Civil No. 3:24CV1989(AWT)

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY,
    Defendant.

## RULING AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Vilma R. appeals the Commissioner's decision
dated January 24, 2024 (the "Decision") denying her application
for supplemental security income ("SSI"), Title XVI benefits,
pursuant 42 U.S.C. §§ 405(g) and 1383(c)(3). She filed a motion
to reverse the Decision of the Commissioner, contending it is
"contrary to the law" and "against the evidence" because "the
plaintiff was under a disability as defined by the Social
Security Act . . . from the date of her onset of disability."
Pl.'s Mot. (ECF No. 19) at 1.  The Commissioner filed a motion
for an order affirming the Commissioner's Decision, maintaining
that "[s]ubstantial evidence supports the ALJ's Decision, and he
applied the correct legal standards."  Def.'s Mem. (ECF No. 25)
at 2.

For the reasons set forth below, the court concludes that
the Administrative Law Judge ("ALJ") applied the correct legal
principles and that the ALJ's findings are supported by

substantial evidence.  Therefore, the Commissioner's Decision is being affirmed.

## I.    LEGAL STANDARD

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function."  Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).  The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).  Substantial evidence "is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted).

Absent legal error, the court may not set aside the decision of the Commissioner if it is supported by substantial evidence.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g) ("The findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be affirmed, even where there may also be substantial evidence to support the plaintiff's contrary position.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## II.  DISCUSSION

The plaintiff contends:

(A) First, that the ALJ erred in his impairments evaluation:

> (1) "The ALJ failed to consider all of R[]'s medically determinable impairments" (Pl.'s Mem. (ECF No. 19-1) at 19);
>
> (2) "The ALJ erred at step two in finding that R[]'s migraine headache, left epicondylitis, and fecal incontinence were nonsevere" (Pl.'s Mem. at 22); and
>
> (3) "The ALJ erred in his assessment of [the] severity [of] R[]'s spine impairment" (Pl.'s Mem. at 31), and "[t]he ALJ erred at step three by failing to provide any analysis of why R[]'s impairments did not meet or equal a listing, and, instead, simply recited the criteria for the listings" (Pl.'s Mem. at 39).

(B) Second, that "[t]he ALJ erred in his credibility assessment" (Pl.'s Mem. at 42) of the medical opinions.

(C) Third, that the ALJ erred by failing to support his Decision with substantial evidence:

> (1) "The ALJ's RFC is fatally flawed as it does not include any accommodations for all of R[]'s

impairments and is not supported by a single medical
opinion" (Pl.'s Mem. at 52); and

(2) "The ALJ did not meet his burden of proof at step
five" (Pl.'s Mem. at 55).

The ALJ determined that the plaintiff had the following
residual functional capacity ("RFC"):

light work as defined in 20 CFR 416.967(b) except she
cannot climb ladders, ropes, or scaffolds, and no exposure
to hazards defined as open moving machinery. Occasionally
climb ramps and stairs, balance, stoop, kneel, crouch and
crawl. She can understand, remember, and carry out simple
instructions in an environment with occasional simple
changes, and moderate noise as defined in the DOT.

R. 948.

Pursuant to the regulations:

Light work involves lifting no more than 20 pounds at a
time with frequent lifting or carrying of objects weighing
up to 10 pounds. Even though the weight lifted may be very
little, a job is in this category when it requires a good
deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or
leg controls. To be considered capable of performing a full
or wide range of light work, you must have the ability to
do substantially all of these activities. If someone can do
light work, we determine that he or she can also do
sedentary work, unless there are additional limiting
factors such as loss of fine dexterity or inability to sit
for long periods of time.

20 C.F.R. § 416.967(b).

Because the plaintiff amended her onset date from December

13, 2015 to November 30, 2022) (See R. 2391 (letter to the ALJ

dated October 18, 2023)), the relevant period here is November

30, 2022 (SSI application date) to January 24, 2024 (ALJ

Decision date). See Pratt v. Astrue, No. 3:10CV413(CFD), 2011 WL

322823, at *3 (D. Conn. Jan. 28, 2011) (noting that to qualify
for supplemental security income under Title XVI, a plaintiff
must be disabled at some point during the pendency of the
application, from the filing date through the date of the ALJ's
decision) (citing 20 C.F.R. §§ 416.330 and 416.335).

### A.    Impairments Evaluation for 11/30/2022 to 1/24/2024

As to the plaintiff's first set of points, under the
regulations:

> At step-two of the sequential analysis, the claimant bears
> the burden of proving that he suffers from a medically
> determinable mental or physical impairment that (1)
> satisfies the duration requirement and (2) significantly
> limits his ability to perform basic work activities. See 20
> C.F.R. §§ 416.909, 416.920(c).
>
> . . .
>
> The duration requirement demands that a claimant's
> impairment last, or be expected to last, for a continuous
> period of at least twelve months. See 20 C.F.R. § 416.909.
> The onset date, not the date of diagnosis, is the critical
> date for measuring whether a claimant's impairment
> satisfies the duration requirement. See Gray v. Astrue, No.
> 04 Civ. 3736, 2007 U.S. Dist. LEXIS 73435, *12, 2007 WL
> 2874049 (S.D.N.Y. Oct. 3, 2007) (quotation and other
> citation omitted).

Orton v. Astrue, No. 7:11-CV-630 FJS/ATB, 2013 WL 3328025, at *7
(N.D.N.Y. July 2, 2013). See also Barnhart v. Walton, 535 U.S.
212, 218-19 (2002) ("the statute. . . specifies that the
'impairment' must last 12 months and also be severe enough to
prevent the claimant from engaging in virtually any 'substantial
gainful work.' The statute, we concede, nowhere explicitly says

that the 'impairment' must be <u>that</u> <u>severe</u> (<u>i.e.,</u> severe enough to prevent 'substantial gainful work') for 12 months. But that is a fair inference from the language."). "'Severe impairments lasting less than 12 months cannot be combined with successive, unrelated impairments to meet the duration requirement.' Social Security Ruling ("SSR") 82-52 (effective August 20, 1980)." <u>April W. v. Kijakazi</u>, No. 3:22CV841(AWT), 2024 WL 1327313, at *12 (D. Conn. Mar. 28, 2024).

> When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include—
>
> > (1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> >
> > (2)  Capacities for seeing, hearing, and speaking;
> >
> > (3)  Understanding, carrying out, and remembering simple instructions;
> >
> > (4)  Use of judgment;
> >
> > (5)  Responding appropriately to supervision, co-workers and usual work situations; and
> >
> > (6)  Dealing with changes in a routine work setting.

20 C.F.R. § 416.922 (b) (effective Mar. 27, 2017). "[M]edical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28 (1985).

### 1. Impairments Not Identified

The plaintiff contends that "[t]he ALJ failed to consider all of R[]'s medically determinable impairments, specifically, HIV, protein S deficiency on permanent anticoagulant therapy, chronic deep vein thromboses, pulmonary insufficiency, IBS, diarrhea, bloating, and asthma, which are not even identified as nonsevere" (Pl.'s Mem. (ECF No. 19-1) at 19). But the plaintiff fails to identify evidence from a medical source that these conditions had an impact on basic work activities for 12 continuous months during the relevant period, November 30, 2022 to January 24, 2024. See Wilkinson on Behalf of Wilkinson v. Bowen, 1987, 847 F.2d 660, 663 (11th Cir. 1987) (holding ALJ did not err in failing to consider alleged additional impairments of applicant for supplemental security income benefits which were not of the requisite 12-month duration).

### 2. Impairments Found Non-severe

The plaintiff contends that "[t]he ALJ erred at step two in finding that R[]'s migraine headache, left epicondylitis, and fecal incontinence were nonsevere" because "these impairments have more than a minimal impact on R[]'s ability to perform basic work activities" (Pl.'s Mem. (ECF No. 19-1) at 22).

The ALJ's Decision states:

> The claimant was also diagnosed with migraine headache, left elbow tendonitis, and fecal incontinence. The undersigned finds these impairments to be non-severe as

the medical evidence establishes only a slight abnormality, or a combination of slight abnormalities, which would have no more than a minimal effect on an individual's ability to perform basic work activities (20 CFR 404.1522, 416.920(c), and 416.922 and SSR 85-28 & SSR 16-3p). Specifically, the claimant's incontinence was treated with a sacral neurostimulator device (Exhibit C4F, page 16 [(10/11/21[1])]). In October 2021, she reported some pain at the implant site; however, she further reported doing well from a continence standpoint and wished to continue using the stimulator (Exhibit C4F, page 53 [(10/10/21)]). Updated records noted some bouts of diarrhea and abdominal cramping (Exhibit C15F, pages 9, 28). However, a March 2022, a CT scan of the abdomen and pelvis demonstrated no acute intra-abdominal pathology, mass, or disease (Exhibit C18F, pages 65-66). The claimant reported that the device was "extremely helpful" for incontinence, and despite some GI issues, her incontinence was controlled (Exhibits Cl3F, page 180 [(6/25/19)]; C14F, page 9 [(5/25/22)]; C20F, page 54 [(12/27/22)]). For example, in April 2022, the claimant reported no episodes of incontinence since placement of device (Exhibit C7F, page 10). In addition, the claimant complained of left elbow pain starting in May 2023. However, by June 2023, she noted improved pain, and there is no subsequent evidence of decreased left elbow functionality (Exhibit C33F, page 33). As such, there is no evidence in the record to support the 12-month durational requirement regarding her left elbow impairment. Furthermore, the claimant's headaches are not consistently reported. In May 2022, she reported 1 to 2 migraines weekly but in December 2022 she denied headaches. She reported headaches in February 2023, but none in March 2023 (Exhibit C14F, page 10[2]; C17F pages 61[3], 21). Further, headaches are not mentioned in recent treatment and to the extent mentioned, the claimant reported that her headaches were significantly

---

[1] In certain instances where the date of an exhibit is significant but the date is not included in the Decision, the court has added dates when quoting the Decision.

[2] Page 10 contains a 5/25/22 progress note, not a February 2023 one. That fact is not material to the court's analysis.

[3] It is unclear which exhibit was being cited because C17F is a 30-page, not a 60-page exhibit. That fact is not material to the court's analysis.

lessened with treatment (Exhibit C33F, page 15
[(4/18/23)]).

In conclusion, the record as a whole is devoid of any
other evidence that the claimant's migraine headache,
left elbow tendonitis, and fecal incontinence, had more
than a minimal effect on her ability to perform basic
work activities or caused any significant symptomology.

R. 945-46.

### a)   Fecal Incontinence

To support her contention that fecal incontinence "[i]s a
constant source of anxiety and interferes with [the plaintiff's]
ability to concentrate" and "her ability to work" (Pl.'s Mem. at
28 (citing R. 2106-07)), the plaintiff points to her statements
at the October 19, 2023 hearing and to details in medical
records dated June 2019, October 2021, March 2022, April 2022,
December 2022, and December 2023.

However, the plaintiff's history with the neurostimulator
supports the ALJ's conclusion. Dr. Eric Girard's June 25,
2019 progress notes show that "[o]verall her incontinence has
resolved" after the neurostimulator was in place (R.4342);
that device had been in place since June 6, a 19-day period.
See R. 2730. Dr. Girard's October 4, 2021 progress notes
reflect that the plaintiff reported doing well from a
continence standpoint and wished to continue using the
stimulator; he notes "I am concerned that she has a
malfunction of her machine versus radiculopathy." R.3079. A CT

scan taken on March 18, 2022 found "No acute intra-abdominal pathology. No evidence of a discrete mass" or "of metastatic disease in the abdomen and pelvis." R. 4980-4981. The ALJ made reference to the fact that on April 18, 2022 there had been "no episodes of incontinence since placement" of the device; that device had been in place since April 4, 2022, a 14-day period. See R. 3621. Dr. Kimmel's May 25, 2022 progress note reflects that "Patient reports a long history of fecal incontinence. . . . She had a device in her left cheek for about 5 years. . . . and a newer, smaller, updated version was placed in the right cheek. . . . She is very pleased with the results." R. 4755. "This [ha]s been extremely helpful." R.4761. APRN Kristina Deconti's December 27, 2022 progress note reflects a visit for self-report of diarrhea and incontinence assessed as "an IBS flare", and a suggestion that the patient go to the hospital if symptoms continue. R.5545. Dr. Houman Rezaizadeh's notes for a December 13, 2023 gastroenterologist visit list complaints of encopresis, bloating and constipation and diagnoses of "Irritable bowel syndrome with constipation and diarrhea (primary)", "Incontinence of feces, unspecified fecal incontinence type", and "Abdominal bloating". R. 1772. The notes reflect that the plaintiff's "bowels have been more constipated lately." R. 1776 (emphasis added). The follow-up notes refer to a "Return in about 1 year (around 12/13/2024)." Id.

Thus, substantial evidence supports the ALJ's finding that fecal incontinence did not have an impact on the plaintiff's basic work activities for 12 continuous months during the relevant period, November 30, 2022 to January 24, 2024.

### b)    Left Epicondylitis

As to the left epicondylitis, the plaintiff points to R[]'s testimony on October 10, 2023 that the left elbow pain "cripples" her fingers (R. 2110), "causing them to cramp up like a claw and limits the amount of weight she can lift" (Pl.'s Mem. at 22). The plaintiff also points to appointments for elbow pain on June 21, 2023 (with a physical therapist), June 23, 2023 (with Dr. Kimmel), June 28, 2023 (same), July 12, 2023 (with an occupational therapist) and August 30, 2023 (same). See Pl.'s Mem. at 22-25. At the hearing the plaintiff testified that it is only "when the pain starts" that her fingers cramp. R. 2110. On June 28, 2023, she reported that "the pain is much better controlled." R. 6084. On August 15, 2023, Dr. Kimmel assessed that she had no "significant limitations with reaching, grasping, handling or fingering objects" (R. 5691) and observed, "[n]ormal range of motion" (R. 6098).

Thus, substantial evidence supports the ALJ's finding that epicondylitis did not have an impact on the plaintiff's basic work activities for 12 continuous months during the relevant period, November 30, 2022 to January 24, 2024.

11

### c)    Migraines

As to the migraines, to support her contention that
"[m]igraines will lead to off-task behaviors and excessive
absenteeism" (Pl.'s Mem. at 27), the plaintiff points to medical
visits on December 21, 2020 (to the ER for migraine), January
27, 2021 (for chronic migraine 2-3 times/week, meds prescribed),
June 1, 2021 (for chronic headache), and May 25, 2022 (for
migraines 1-2 times per week), and to the plaintiff's testimony
on October 19, 2023 (reported migraines 2-3 times a week that
would cause her to medicate and isolate in a dark room). See
Pl.'s Mem. at 25-27. However, during the relevant period, Dr.
Kimmel reported that the plaintiff was "[n]egative for . . .
headaches" on January 18, 2023 (R. 4895) and on March 14, 2023
(R. 4906). See also R. 4755 (Dr. Kimmel's 5/25/22 progress note
reads "Patient denies any headaches".). On April 18, 2023, the
plaintiff reported that her headaches had "significantly
lessened" with the current treatment. R. 6068.

Thus, substantial evidence supports the ALJ's finding that
migraines did not have an impact on the plaintiff's basic work
activities for 12 continuous months during the relevant period,
November 30, 2022 to January 24, 2024.

### 3. Spinal Impairment

The plaintiff contends (a) that the ALJ "did not consider
updated clinical information or the impact of pain on R[]'s

functioning"; (b) that the "step three analysis is only a recitation of two listings for spinal disorders unsupported by a single citation of the record"; and (c) that the "[s]tep four analysis relied exclusively on selective benign or irrelevant exam entries." Pl.'s Mem. (ECF No. 19-1) at 31.

### a) Updated Clinical Information and Pain

The plaintiff cites to evidence of back pain treated with medication beginning in February 2022 and a history of treatment culminating in a lumbar fusion in January of 2024, but there is also substantial evidence supporting the ALJ's findings, as discussed in section c) below. Also, the plaintiff's lumbar spine MRIs and x-rays were generally unremarkable until September 18, 2023, the lumbar fusion was on January 3, 2024, and the period between those two dates can not satisfy the requirement of 12 continuous months during the relevant period.

Thus, the ALJ did not err in his assessment of the clinical information or of the impact of pain on R[]'s functioning.

### b) Listings

The plaintiff challenges the ALJ's findings as to Listings 1.15 (disorder of the skeletal spine) and 1.16 (lumbar spinal stenosis). She contends that "[t]he ALJ erred at step three by

failing to provide any analysis of why R[]'s impairments did not meet or equal a listing . . . ." (Pl.'s Mem. at 39). However,

> the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

SSR 17-2p (effective Mar. 27, 2017). Here, "the absence of an express rationale does not prevent [the court] from upholding the ALJ's determination regarding [the plaintiff's] claimed listed impairments, since portions of the ALJ's [D]ecision and the evidence before him indicate that his conclusion was supported by substantial evidence." Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1986).

Thus, the ALJ did not err in making the listings determination.

### c) Step 4: RFC Support

> The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. Examples such as reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, the symptom of pain. These findings may be consistent with an individual's statements about symptoms and their functional effects. However, when the results of tests are not consistent with other evidence in the record, they may be less supportive of an individual's statements about pain

or other symptoms than test results and statements that are consistent with other evidence in the record.

SSR 16-3p (effective March 28, 2016).

Here, the plaintiff's lumbar spine MRIs and x-rays were generally unremarkable until September 18, 2023. Compare C6F 31, R. 3447 (3/15/22 X-ray, Douglas Gibson, M.D., "moderate disc space narrowing L5-S1"); R. 4543 (4/24/22 MRI, Dr. Carlos Badiola, M.D., "[m]ild disc bulging at L4-L5" and "[s]mall central disc protrusion at L5-S1"); R. 5747 (8/29/23 X-ray, Michael Baldwin, M.D., "[m]oderate degenerative spondylosis of the L5-S1 level") with R. 6014 (9/18/23 MRI, Irene Cordico, P.A., "[m]oderate-to-severe left sided neural foraminal stenosis at L5-S1."). On March 15, 2022, "Pham, VI H, PA-C" observed that Plaintiff's gait was normal, she had full muscle strength and normal reflexes and sensations in her arms and legs despite low back pain. R. 3458. On August 29, 2022, Dr. Kimmel noted that although the plaintiff complained of back pain, she reported "[s]he is able to get through the day and do the things that she mostly needs to do." R. 4776.

Through most of 2023, Dr. Kimmel's observations during the plaintiff's physical examinations were generally unremarkable as to the spinal impairment except for lumbar spine tenderness. See R. 5572 (4/18/23); R. 6074 (5/18/23); R. 6098 (8/15/23, also finding "Decreased flexion"); R. 6103 (10/17/23). Dr. Kimmel's

notes for a January 18, 2023 visit document a negative straight
leg raise, normal gait, and full motor strength in the lower
extremities. <u>See</u> R. 4896 ("Negative SLR. Gait normal. Legs 5/5
motor."). His notes for August 15, 2023 reflect "Normal range of
motion" in general and "Normal range of motion" of "cervical
back", "Coordination normal" (R. 6098) and "Negative for gait
problem and myalgias" (R. 6097). PA-C Irene Cordilico's notes
for an August 29, 2023 office visit document "No complaints of
urinary or bowel changes", an indicator of nerve compression,
and "4/5 left hip flexion otherwise normal exam. Sensory grossly
intact. Gait is slow but steady." R. 5755, 5758.

Also, contrary to the plaintiff's suggestion, the ALJ
supported the RFC determination with the findings of State
agency medical consultants Dr. Jogendra Singh and Dr. Michael
Greenberg. Dr. Singh and Dr. Greenberg each found that the
plaintiff could lift twenty pounds occasionally and ten pounds
frequently; that she could sit, stand, and/or walk for about six
hours each of an eight-hour workday; occasionally climb ramps or
stairs; and frequently balance, stoop, kneel, crouch, and crawl.
<u>See</u> R. 2156-57 (Dr. Singh), R. 2165 (Dr. Greenberg).

Thus, the ALJ did not err in making the impairments
evaluation.

**B.   Medical Opinions**

As to the plaintiff's second point, challenging the ALJ's credibility assessments of the opinions of Ronald Kimmel, M.D.; Kristin M. Carrol, P.T.; psychological consultants Janine Swanson, M.D., and Gregory Hanson, Ph.D.; and medical consultants Jogendra Singh, M.D., and Michael Greenberg, M.D., Section 416.920c of the regulations provides[4]:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

> (b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

>> (1) Source-level articulation. . . . [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior

---

[4] Because the plaintiff's claim was filed on November 30, 2022 (See R. 2391.), Section 416.920c applies to this case.

administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. . . .  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate . . . .

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

(c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive

18

the medical opinion(s) or prior administrative medical
finding(s) will be.

(3) Relationship with the claimant. This factor
combines consideration of the issues in paragraphs
(c)(3)(i)-(v) of this section.

(i) Length of the treatment relationship. The
length of time a medical source has treated you
may help demonstrate whether the medical source
has a longitudinal understanding of your
impairment(s).

(ii) Frequency of examinations. The frequency of
your visits with the medical source may help
demonstrate whether the medical source has a
longitudinal understanding of your impairment(s).

(iii) Purpose of the treatment relationship. The
purpose for treatment you received from the
medical source may help demonstrate the level of
knowledge the medical source has of your
impairment(s).

(iv) Extent of the treatment relationship. The
kinds and extent of examinations and testing the
medical source has performed or ordered from
specialists or independent laboratories may help
demonstrate the level of knowledge the medical
source has of your impairment(s).

(v) Examining relationship. A medical source may
have a better understanding of your impairment(s)
if he or she examines you than if the medical
source only reviews evidence in your folder.

(4) Specialization. The medical opinion or prior
administrative medical finding of a medical source who
has received advanced education and training to become
a specialist may be more persuasive about medical
issues related to his or her area of specialty than
the medical opinion or prior administrative medical
finding of a medical source who is not a specialist in
the relevant area of specialty.

(5) Other factors. We will consider other factors that
tend to support or contradict a medical opinion or
prior administrative medical finding. This includes,
but is not limited to, evidence showing a medical

> source has familiarity with the other evidence in the
> claim or an understanding of our disability program's
> policies and evidentiary requirements. When we
> consider a medical source's familiarity with the other
> evidence in a claim, we will also consider whether new
> evidence we receive after the medical source made his
> or her medical opinion or prior administrative medical
> finding makes the medical opinion or prior
> administrative medical finding more or less
> persuasive.

(d) Evidence from nonmedical sources. We are not required
to articulate how we considered evidence from nonmedical
sources using the requirements in paragraphs (a)-(c) in
this section.

20 C.F.R. § 416.920c (effective March 27, 2017).

### 1.   Treating Source Ronald Kimmel, M.D.

The plaintiff contends that "[t]he arguments the ALJ
offered to support his rejection" of "two opinions of Ronald
Kimmel, M.D., R[]'s primary care doctor . . . are baseless,
unsupported, and are inconsistent with the record as a whole"
(Pl.'s Mem. (ECF No. 19-1) at 42); that he "ignored the
accompanying medical entries" (Pl.'s Mem. at 45); that he "was
obligated to consider whether the opinions were consistent with
the entire record" (Pl.'s Mem. at 46); and that he "did not
contact Kimmel to request further explanation or amplification
of his findings" (Pl.'s Mem. at 48).

The Decision states:

Regarding the opinion evidence, in August 2023, Ronald
Kimmel, M.D. opined that the claimant's mental impairments
prevented her from working. She was markedly limited in her
ability to remember locations and work-like procedures,
understand and remember detailed instructions, accept

instructions and respond appropriately to criticism from
supervisors, carry out detailed instructions, maintain
attention and concentration, perform activities within a
schedule, maintain regular attendance, sustain an ordinary
routine, make simple work-related decisions, travel in
unfamiliar places, use public transportation, and complete
a normal work day and workweek. She had moderate
limitations in the ability to understand and remember very
short, simple instructions, interact with the public, get
along with co-workers, carry out very short, simple
instructions, work in coordination with others, respond
appropriately to changes in the work setting. However, the
claimant had no significant limitation maintaining socially
appropriate behavior, be aware of normal hazards, and no
limitations asking simple questions or requesting
assistance. In addition, she could sit, stand, and walk 1
hour each in an 8-hour workday, occasionally lift and carry
up to 10 lbs. but never carry more than 10 lbs. She had no
limitations reaching, grasping, handling, or fingering
objects with the bilateral upper extremities. With that,
she could rarely climb stairs, and never stoop, bend,
crouch, squat, and climb ladders. She could rarely have
exposure to marked changes in temperature or humidity, and
no exposure to unprotected heights, moving machinery,
driving automotive equipment, and exposure to dust and
fumes. Lastly, she could be off-task more than 25% of the
time (Exhibit C24F).

In January 2024, Dr. Kimmel submitted a second Medical
Source Statement. (C34F). Indicating similar restrictions
except reaching limited to 75% of the time.

The opinions are not persuasive for various reasons. First,
the medical evidence of record the day of the first medical
source statement shows some complaints of distractibility,
anxiety, and back pain (Exhibit C33F, pages 41, 47).
However, a mental status exam noted full orientation,
normal behavior, thought content, and judgment, and calm
appearance, clear speech, and coherent thoughts (Exhibit
C33F, page 45). Moreover, a follow-up mental status exam
noted full orientation, and normal mood, affect [("a bit
flat")], behavior, thought content, judgment, and no
evidence of concentration difficulties (Exhibit C33F, pages
50-51). As such, there is no evidence in Dr. Kimmel's

records consistent with, and supportive of such extreme psychiatric limitations. Moving on, despite arthralgia complaints and lumbar tenderness, she was negative for gait issues and myalgia. Further, August 2023, and October 2023 exams noted normal range of motion and normal coordination with no evidence of gait disturbance (Exhibit C33F, pages 45, 50-51). These findings are inconsistent with such restrictive physical limitations sitting, standing, walking, and performing postural maneuvers. Moreover, the mental and physical exam findings in C33F, noting generally normal findings, do not offer any evidence to support an off-task limit more than 25% of the time. Lastly, the opinion that the clamant was prevented from working is not persuasive as issues of disability are reserved to the commissioner.

R. 950-51.

Here, the ALJ found Dr. Kimmel's opinions not persuasive because the doctor's own records did not support and were inconsistent with the extreme mental and physical limitations and the over 25% and 75% off-task limits, and they were inconsistent with other medical opinions: mental and physical exam notes by Dr. Kimmel during the relevant time period reflect full orientation, normal behavior, mood, thought content, and judgment; calm appearance, clear speech, coherent thoughts, and no evidence of concentration difficulties; no gait problems, myalgias, or neurological weakness; and normal range of motion and coordination. See R. 4837-38 for 12/23/22; R. 5571-73 for 4/18/23; R. 6073-74 for 5/18/23; R. 6097-98 for 8/15/23; R. 6102-04 for 10/17/23. Also, Dr. Kimmel's opinions were

inconsistent with the opinions of Dr. Janine Swanson[5], Gregory

Hanson, Ph.D.[6], PT Carroll[7], and Drs. Singh and Greenberg's

opinions[8].

If the Commissioner's decision is supported by substantial

evidence, that decision will be affirmed, even where there may

also be substantial evidence to support the plaintiff's contrary

position.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir.

1982). Here, substantial evidence supports the ALJ's Decision.

With respect to the plaintiff's contention that the ALJ

should have gotten more information from Dr. Kimmel, "where

there are no obvious gaps in the administrative record, and

where the ALJ already possesses a 'complete medical history,'

the ALJ is under no obligation to seek additional information in

advance of rejecting a benefits claim." Rosa v. Callahan, 168

F.3d 72, 79 n.5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d

41, 48 (2d Cir. 1996)). A "[c]omplete medical history means the

records of your medical source(s) covering at least the 12

---

[5] See R. 2155, dated 1/27/23 ("MSE [(Mental Status Exams)] are all grossly intact. Totality of MEr [(Medical Evidence of record)] including MEr from earlier findings for longitudinal perspective can support MRFC [(Mental Residual Functional Capacity)] but not listing.").

[6] See R. 2166, signed 3/6/23 ("Clmnt can understand and remember simple and detailed instructions and is able to maintain concentration and attention over extended periods for simple and detailed tasks, but the clmnt is unable to consistently maintain CPP for complex tasks when upset about health or family issues.").

[7] See R. 5696-703, 8/31/23 (unable to work for more than 6 months "but less than 12 months").

[8] See R. 2156 for Dr. Singh and R. 2165-66 for Dr. Greenberg (can stand and/or walk and sit with normal breaks for about "6 hours in an 8 hour workday").

months preceding the month in which you file your application."
20 C.F.R. § 416.912(b)(1)(ii). In determining whether there has
been "inadequate development of the record, the issue is whether
the missing evidence is significant." Santiago v. Astrue, 2011
WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v.
Chater, 94 F.3d 34, 37-38 (2d Cir. 1996)). "[R]emand is not []
required" where "the record . . . . [i]s adequate to permit an
informed finding by the ALJ". Tankisi v. Comm'r of Soc. Sec.,
521 Fed. Appx. 29, 34 (2d Cir. 2013). Here, the ALJ reviewed
medical records for a period significantly longer than 12 months
preceding November 30, 2022, the filing date, and identified
substantial evidence to support his findings in a form
reviewable by this court.

Thus, the ALJ did not err in assessing Dr. Kimmel's medical
opinions.

### 2.    Treating Source Kristin M. Carroll, P.T.

The plaintiff contends that the opinion of Physical
Therapist Kristin M. Carroll was "supported by her own
observations in the July 5, 2023 physical therapy evaluation
that she attached to her opinion" (Pl.'s Mem. (ECF No. 19-1) at
49) and that "[t]here should have been an ellipsis after the
ALJ's recitation of moving well and sitting in a neutral spine
position because Carrol went on to describe exactly why R[] had

the limitations Carrol asserted [in] her opinion" (Pl.'s Mem. at 50).

The Decision states:

In August 2023, Kristin Carrol, physical therapist opined that the claimant's limitations would last less than 12 months. She could sit 1 hour in an 8-hour workday, never stand, and walk 2 hours in an 8-hour workday. She could occasionally lift and carry up to 10 lbs. and she had unspecified limitations reaching, grasping, handling, or fingering. With that, she could rarely climb stairs, crouch, and squat, and never stoop, bend, twist, and climb ladders. Lastly, she would be off task more than 25% of the time but capable of tolerating high stress. Notably, she had no limitations in memory and understanding, social interaction, sustained concentration and persistence, and adaption, except she was moderately limited traveling to unfamiliar places (Exhibit C25F).

The opinion is not persuasive. First, Ms. Carrol opined that the claimant's limitations would not last more than 12 months. Moreover, her July 2023 assessment noted lumbar tenderness and limited range of motion. However, the claimant moved well walking into the clinic and she was able to sit in neutral spine position. These findings are inconsistent with a complete inability to stand, and sit for only 1 hour in a workday. Further, these findings are inconsistent with Dr. Kimmel's exams noting normal range of motion and coordination with no evidence of gait disturbance (Exhibit C33F, pages 45, 50-51). Further, her opinion that the claimant has limitations reaching, grasping, handling or fingering is not persuasive as it is vague, and she failed to specify any limitations. The opinion regarding time off-task is not persuasive as there is no evidence in her treatment notes explaining such a restrictive limitation. Further, this finding is contradicted by her opinion that the claimant was capable of tolerating high stress. Lastly, Ms. Carrol's psychiatric opinions are not persuasive as she is a

physical therapist not a mental health
professional.

R. 951.

Here, the ALJ found PT Carroll's opinion not persuasive because it was not supported by her own conclusion and because it was inconsistent with the opinions of Drs. Kimmel, Singh, and Greenberg. The finding of "significant limitations with reaching, grasping, handling or fingering objects" is not supported by an indication of the percentage of time during an 8-hour workday that the plaintiff can use her hands, fingers, and arms. It appears that initially "No" significant limitations was marked and crossed out; "Pt has additional right elbow pain" appears next to the cross-out. Although "Yes" is marked, the box provided for the purpose of setting forth the percentage of time during the workday that the plaintiff can use her hands, fingers and arms was left blank.

Under the mental RFC assessment, PT Carroll marks that the plaintiff's mental symptoms are likely to be so severe that they interfere with the attention and concentration needed to perform even simple work tasks more than 25% of the time but provides no support for this assertion and appears to inconsistently opine that the plaintiff is capable of tolerating high work stress and has no limitation in terms of memory, understanding, social interaction, sustained

concentration and persistence, and adaptation (except moderate limitations traveling in unfamiliar places or using public transportation). Moreover, as noted by the ALJ, PT Carroll is not a mental health expert.

PT Carroll's findings of complete inability to stand and to sit for only 1 hour (R. 5698), the "[i]nability to bend due to pain" (R. 5696), and the "[i]nability to walk without deficit" (Id.) are inconsistent with her observation that the plaintiff was "moving well walking into [the] clinic" and "sitting in neutral spine" (R. 5706) (even after accounting for the fact that "facial grimacing" indicated "discomfort" with sit to supine and prone positions (Id.)) and her conclusion that such limitations would last "6 months or more, but less than 12 months" (R. 5696).

PT Carroll's opinion indicates that she was treating the plaintiff "Since 7/5/23" and that PT Carroll also treated the plaintiff on "7/10, 7/12, 8/9". R. 5696. Around that time, Dr. Kimmel's progress notes show normal range of motion and coordination with no evidence of gait disturbance. See R. 5572-73 (4/18/23), R. 6074 (5/18/23), R. 6098 (8/15/23), R. 6103-104 (10/17/23). Her opinion is also inconsistent with Dr. Singh's and Dr. Greenberg's finding that the plaintiff can stand and/or walk and sit with normal breaks for about 6 hours in an 8-hour

workday. See R. 2156 (Dr. Singh, signed 2/16/23); R. 2165 (Dr. Greenberg, dated 3/4/23).

Thus, the ALJ did not err in assessing PT Carroll's medical opinions.

### 3.    Medical and Psychological Consultants

As to State Agency Medical Consultants Jogendra Singh, M.D. (Surgeon (R. 2154)) and Michael Greenberg, M.D. (Neurologist (R. 2163)), the plaintiff contends:

> Singh's notes make no reference to the implantation of the neurostimulator device, but nonetheless noted that "Clmnt had C defficle [sic] infection with diarrhea and resulting in incontinence" and concluded that R[]'s "[f]ecal incontinence is most likely due to diarrhea which is likely to improve with treatment." (R. at 2154). Unlike the ALJ, Singh considered the diarrhea a medically determinable impairment, but believed the fecal incontinence was a derivative consequence. Singh also misunderstood both. R[] had incontinence of fully formed stools.

> The list of MDIs and their severity at the initial review were: Asymptomatic Human Immunodeficiency Virus (HIV) Infection, Phlebitis and Thrombophlebitis, Depression and Anxiety, all of which were found to be severe. There was no mention of a back impairment, whether severe or not. (R. at 2154-56).

> Singh's summary of the MER, r. at 2154, does not mention any back impairment.

> . . . .

> Nonetheless, in finding Singh's and Greenberg's opinions fully persuasive and adopting it as his RFC, the ALJ bootstrapped in the limitations supposedly caused by R[]'s back impairment: "Further, the opinions are consistent with medical evidence of back pain with degenerative disc disease; but otherwise mild findings on exam []." (R. at 952). This appears to be a 'bold-faced

lie' but it could be that the ALJ thought he was qualified
to evaluate a completely distinct severe impairment and
opine, without the benefit of a qualified opinion, that the
limitations fit snuggly within the RFC. His concomitant
rejection of the functional analysis provided by Kimmell
sparkles with hypocrisy.

> .  .  .  .

> Rather than formulating an RFC on his own and/or
modifying medical opinions because the source did not have
the benefit of the complete record, the ALJ should have
ordered that the complete medical record be reviewed by
medical and psychological specialists in order to obtain an
updated MRFC and RFC. This is part of his obligation to
develop the record.

Pl.'s Mem. at 50-52.

> The Decision states:

> In February 2023, Jogendra Singh, M.D., State agency
medical consultant opined that the claimant could lift and
carry 20 pounds occasionally and 10 pounds frequently, sit
6 hours, and stand and walk 6 hours in an 8-hour workday.
She could never climb ladders, ropes, or scaffolds, and
occasionally climb ramps and stairs, and frequently
balance, stoop, kneel, crouch, and crawl (Exhibit C4A). In
March 2023, Michael Greenberg, M.D., State agency medical
consultant affirmed the prior agency opinion (Exhibit C5A).
The opinions are generally persuasive as both physicians
reviewed the available evidence and program knowledge.
Further, the opinions are consistent with medical evidence
of back pain with degenerative disc disease; but otherwise,
mild findings on exam (Exhibits C25F; C27F, pages 17-18;
C33F, pages 44-51).

R. 952.

> Here, the ALJ articulated the reasons for finding the State

agency reviewers' opinions generally persuasive, namely, that

they reviewed the available evidence and relied on program

knowledge and the opinions were consistent with mild findings on

exam. To support his opinion with respect to the RFC and MRFC,

Dr. Singh cites to the following evidence related to physical

exams and MRIs:

> PE
> 1/2023PE Kimmel MD
> Comments: Lower lumbar spine tender on palpation,
> Parasp[i]nal musculature is tender, mostly on left. Slight
> decreased flexion. Negative SLR, Ga[i]t normal. Legs 5/6
> motor.
> 5/2022Physical Exam On physical examination, she is awake
> alert, not in acute distress. Breathing nonlabored. Motor
> 5/5 lower extremities bilaterally. Sensory grossly intact.
> Gait and straight and steady.
> MRI Lumbar: . 4/2022
> Mild disc bulging at L4-L5. 2. Small central disc
> protrusion at L5-S1.
> 10/2022
> Musculoskeletal; Negative. . . . .
>
> GI
> 12/2021
> Kochif APRN:Gl: Upcoming surgery to implant the device
> which should stabilize her bowels.
> 3/2022 MRI Impression: No acute intra-abdominal pathology.
> No evidence of a discrete mass at the appendiceal orifice.
> No evidence of metastatic disease in the abdomen and
> pelvis.
> 1. Incontinence of feces, unspecified fecal incontinence
> type Patient to get replacement of neurostimulator on
> 4/4/22.
> 12/2022Kimmel MD:
> diarrhea and incontinence
> irritable bowel syndrome
>
> . . . .
>
> does not meet or equal please consider rfc, mrfc

R. 2153. Dr. Singh supports his medical evaluation with clinical

records:

> Allegations: Fecal incontinence, anxiety, depression, HIV,
> and blood clot.

ADLs: Prepares simple meals. Does light HW. Rides. Shops.
Uses a walker.
MER:
Ronald Kimmel, MD:
09/12/2022:
HPI: Clmnt c/o abdominal pain associated with nausea, cold
sweats, and diarrhea. She has h/o H.pylori and C deffcle.
She had GI evaluation, and had **coloscopy that was normal.**
She has h/o fecal incontinence and HIV.
PE:
BP:122/80
Weight 141lbs
BMI:26.7
NAD
CVS: RRR
Lungs: Clear
HIT-MER UConn:
03/18/2022: CT scan of abdomen showed no acute
intrabdominal pathology.
07/21/2022,08/22/2022:
HPI: Clmnt with h/o HIV was evaluated for DVT due to COVID
infection.
PE:
NAD
HEENT: WNL
CVS: RRR
Lungs: Clear
Abdomen: Soft. Non-tender.
Neurologic: No focal deficits
Lab:
HIV-RNA uant PCR
Last CD4 count in 01/22 was 461(36%) and nearly
undetectable viral load.
ASSESSMENT: This 50 YO female filing for DI benefits
alleging disability due to multiple impairments.
Clmnt has HIV disease with stable course.
Last CD4 count in 1/22 was 461(36%) and nearly undetectable
viral load. She is taking Tivicay and Descovy
She has h/o DVT due to COVID infection and had
anticoagulation therapy.
Clmnt had C defficle infection with diarrhea and resulting
in incontinence.
CONCLUSION: The MDI of HIV disease is severe.
The MDI of COVID infection with DVT is also severe.
However, they do not meet or equal the listing singly or in
combination.
Please see RFC.

> Remarks: Fecal incontinence is most likely due to diarrhea which is likely to improve with treatment.

R. 2154.

On March 4, 2023, Dr. Greenberg concluded that there was "No worsening or changes. No new additional TS [(treating source)]." R. 2162. He affirmed Dr. Singh's February 16, 2023 RFC as written. See R. 2163.

As to State Agency Psychological Consultants Janine Swanson, M.D., and Gregory Hanson, Ph.D., the plaintiff states:

> The ALJ found the opinions of state psychological consultants Janine Swanson, MD and Gregory Hason, Ph.D. "generally persuasive," despite feeling the need to alter their opinions to include moderate limitations in adaptation and managing oneself. (R. at 952). Swanson reviewed records from two mental health visits in August and November of 2022. (R. at 2153). Swanson found only mild limitations in all areas of mental functioning except the ability to concentrate, persist or maintain pace. (R. at 952, 2155). Hanson adopted her opinion. (R. at 952, 2163-64).

Pl.'s Mem. at 50.

The Decision states:

> Regarding the agency opinions, on January 27, 2023, Janine Swanson, M.D. State agency medical consultant opined that the claimant had mild limitation in the ability to understand, remember, or apply information, mild limitation interacting with others, moderate limitation in the ability to concentrate, persist, or maintain pace, and mild limitation in the ability to adapt or manage oneself (Exhibit C4A). In March 2023, Gregory Hanson, Ph.D., State agency medical consultant affirmed the prior agency opinion (Exhibit C5A). The opinions are generally persuasive as both physicians reviewed the evidence and have applicable specialties. However, based on hearing testimony, the undersigned has further limited the claimant to moderate limitation in adaptation and managing oneself.

R. 952.

Here, the ALJ articulated the reasons for finding the State

agency reviewers' opinions persuasive, namely, that they

reviewed the evidence and have applicable specialties, and

substantial evidence supports their opinions. In his opinion

dated January 27, 2023, Dr. Swanson explains

> Assessment covers for T16 for a 50-year-old clmnt with
> allegations of anx/dep. Clmnt with 11th grade education and
> Work History: retail. Numerous past denials including at
> ALJ level 12/2020. TS notes show very good compliance and
> engagement with stability in mood and anx. MSE [(Mental
> Status Examination)] are all grossly intact. Totality of
> Mer [(Medical Evidence of record)] including MEr from
> earlier findings for longitudinal perspective can support
> MRFC but not listing.
>
> . . . .
>
> Clmnt can understand and remember simple and detailed
> instructions and is able to maintain concentration and
> attention over extended periods for simple and detailed
> tasks, but the clmnt is unable to consistently maintain CPP
> for complex tasks.

R. 2155, 2158. Dr. Swanson relied on the following medical

records:

> PSY
> 8/2022 Kochie APRN:
> Patient presents as alert and oriented x 3. Easily engaged
> and conversive. Her mood is more anxious with an anxious
> affect, her speech is spontaneous and productive, not
> pressured and with normal volume. Articulation and
> coherence are good. Thought Processes are clear and
> organized. Denied having any suicidal or homicidal
> ideation. No thoughts of worthlessness or feelings of
> hopelessness. She has some recent paranoid thoughts No
> obsessive or ruminative thinking. Immediate, recent and

remote memory all appear intact. Fund of knowledge is good.
Judgment and insight are intact
11/2022 mood has been fairly stable with very minimal. She
reports no significant mood swings or anxiety. She denied
having any panic attacks. In spite of these recent physical
stressors. She appears to be in good spirits is handling
things well.] She feels like her sleep is also Improved-
Her energy levels and motivation are back to her baseline.
Her appetite remains normal. She denied any suicidal
thoughts.

R. 2153. Also, on March 6, 2023 Dr. Hanson explained:

No changes at RECON, but claimant described breathing
problems post-COVID, many health issues hindering function
day to day.
3373 lives with son, sometimes daughter helps with shaving.
She prepares meals, cleans, needs help with laundry.
Shops, pays bills. Anxious around many people. Does not
drive, hangs out with daughter at home. Sees grandchildren.
UCONN PCP PE 1/2023, MSE WNL, on psych meds, antivirals for
HIV, 'stable course'. Dr. Bhumi
Dr. Kimmel noted PTSD issues, 'doing fairly well from the
mental health perspective' 1/18/23. Tearful when talking
about partner, who never told her he was dying of AIDS,
infected her.
Dr. Kochis 8/2022 in good spirits, no significant mood
swings or anxiety, on Buspar, Lexapro, Ativan, Ambien,
Neurontin. Stressed by mother's move to GA, recent surgery,
COVID19 issues. MSE WNL.

. . . .

Clmnt can understand and remember simple and detailed
instructions and is able to maintain concentration and
attention over extended periods for simple and detailed
tasks, but the clmnt is unable to consistently maintain CPP
for complex tasks when upset about health or family issues.

R. 2164, 2166.

Thus, the ALJ did not err in assessing the medical and

psychological consultants' medical opinions.

34

### C.  Substantial Evidence

As to the plaintiff's third set of points, contrary to the plaintiff's assertion, for the reasons discussed above, the ALJ did support the RFC determination with substantial medical evidence.

As to step five, the plaintiff contends that the ALJ did not meet his burden of proof:

> The ALJ found that Rodriguez could perform the positions of Marker, DOT #209.587-034, Routing clerk, DOT# 222.687-022, and Mail clerk, DOT # 209.687-026. Rodriguez's impairments prevent her from performing these jobs. The jobs of marker and mail clerk require working with glues, needles, stables, pins and mail opening machines which are precluded for someone on anticoagulants and with pulmonary insufficiency. See, Dictionary of Occupational Titles. The marker, routing clerk and mail clerk jobs have reasoning requirements of 2 or 3 and thereby exceed the RFCs restrictions to understanding, remembering, and carrying out simple instructions in an environment with occasional simple changes. See, Dictionary of Occupational Titles and Dictionary of Occupational Titles, Appendix C. In Gibbons v. Commissioner of Soc. Sec., 2023 WL 3830774 (June 6, 2023), the Second Circuit Court remanded an appeal based on this apparent conflict with the Dictionary of Occupational Titles (D.O.T.) reasoning level requirements and so-called unskilled work. According to the Vocational Expert Handbook published by the SSA, also instructs that allowing jobs with a reasoning level of 3 for individuals limited to unskilled work conflicts with the DOT.

Pl.'s Mem. (ECF No. 19-1) at 55.  However, the plaintiff fails to demonstrate that she had limitations due to being on anticoagulants or pulmonary insufficiency for the required duration during the relevant period, the ALJ relied on VE testimony to find that the plaintiff could perform the

occupations of marker and routing clerk, the hypothetical question to the VE mirrored the RFC, and the plaintiff has failed to identify any conflict between the VE's testimony and the DOT.  Although the plaintiff cites the Summary Order in Gibbons, 2023 WL 3830774, to support her position, a level 3 rather than the level 2 reasoning level required of a marker, routing, and mail clerk was at issue in Gibbons.

Thus, medical tests, treatment notes, activities of daily living, and the assessments of State agency doctors provide substantial support for the ALJ's finding that the plaintiff was not disabled during the relevant time period, and the plaintiff fails to demonstrate that based on all of the evidence, "no reasonable factfinder could have reached the same conclusion" (Spottswood v Kijakazi, 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (citation and internal quotation marks omitted)).

## III.  CONCLUSION

For the reasons set forth above, the plaintiff's Motion for Order reversing the Decision of the Commissioner (ECF No. 19) is hereby DENIED, and the defendant's motion for an order affirming the Decision of the Commissioner (ECF No. 25) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 6th day of January 2026, at Hartford,

Connecticut.

                                    /s/AWT
                           Alvin W. Thompson
                United States District Judge